UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
UNITED STATES OF AMERICA :
:
- v. - :     09 Cr. 940 (TPG)
:
SHIRIN KALIMI, :
  a/k/a "Shirin Siouny," :
:
        Defendant. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S SENTENCING MEMORANDUM

                             PREET BHARARA
                             United States Attorney for the
                             Southern District of New York
                             One St. Andrew's Plaza
                             New York, New York 10007

Amy Lester
Assistant United States Attorney
     -Of Counsel-

The Government respectfully submits this memorandum in connection with the sentencing of defendant Shirin Kalimi, a/k/a "Shirin Siouny," which is scheduled to take place on May 11, 2012, at 4:00 p.m.  For the reasons set forth below, the Court should sentence the defendant to a term of imprisonment within the applicable advisory Sentencing Guidelines range and impose restitution in an amount to be determined within the statutorily prescribed time period.

## BACKGROUND

In October 2009, the defendant and her co-conspirators were arrested and charged with committing mortgage fraud.  Specifically, Indictment 09 Cr. 940 (TPG) charged the defendant with engaging in a conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349, and ten substantive counts of wire fraud, in violation of Title 18, United States Code, Section 1343.  As alleged in the Indictment and outlined in the PSR, the charged mortgage fraud conspiracy revolved around a scheme in which the defendants acquired properties at auction for a low price and then obtained home mortgage loans for straw purchasers to buy those properties through the submission of false and fraudulent documentation to various lenders.  (Indictment ¶¶ 8-15; PSR ¶¶ 27-34).  In so doing, the defendants fraudulently induced lenders to make loans to persons and at terms which they otherwise would not have funded.  (Indictment ¶ 7; PSR ¶ 26).  The defendants then used the difference between the original purchase price at auction and the inflated home mortgage loan price to enrich themselves.  (Indictment ¶ 16; PSR ¶ 35).  During the course of the conspiracy, the defendants obtained home mortgage loans with a combined face value of over $6.8 million.  (Indictment ¶ 6; PSR ¶ 51).  As a result of the straw buyers' inability to repay the loans, the lenders suffered losses of between $1

and $2.5 million.  (PSR ¶ 51).

On September 26, 2011, the defendant pled guilty to Count One of the Indictment pursuant to a Plea Agreement with the Government.  Under the terms of the Plea Agreement, the parties agreed that, pursuant to the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") the advisory sentencing range for the defendant was a term of 27 to 33 months' imprisonment.  This Guidelines calculation was based on an agreed-upon loss amount of between $1 and $2.5 million, and a two-level reduction in the defendant's offense level, due to her role as a minor participant in the conduct charged in Count One, pursuant to U.S.S.G. § 3B1.2(b).  The Presentence Investigation Report prepared by the United States Probation Office concurs with these calculations and recommends a below-Guidelines sentence of one year and one day in prison.  (PSR at 29 (Sentencing Recommendation)).

## ARGUMENT

As discussed below, the Government respectfully submits that application of the statutory sentencing factors set forth in Title 18, United States Code, Section 3553(a) to the defendant's conduct calls for the imposition of a sentence within the advisory Guidelines range. In addition, the Government requests that the Court impose restitution within 90 days of sentencing, for which the defendant should be jointly and severally liable with her co-conspirators.

**I.    A Guidelines Sentence Would Be Sufficient, But Not Greater than Necessary, to Address the Statutory Goals of Sentencing**

**A.    Applicable Law**

The advisory Sentencing Guidelines promote the "basic aim" of Congress in

enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States* v. *Booker*, 543 U.S. 220, 252 (2005). Thus, the Guidelines are more than "a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." *United States* v. *Crosby*, 397 F.3d 103, 113 (2d Cir. 2005). The applicable Sentencing Guidelines range "will be a benchmark or a point of reference or departure" when considering a particular sentence to impose. *United States* v. *Rubenstein*, 403 F.3d 93, 98-99 (2d Cir. 2005).

In furtherance of that goal, a sentencing court is required to "consider the Guidelines 'sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant,' the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims." *Booker*, 543 U.S. at 224 (citations omitted).

Along with the Guidelines, the other factors set forth in Section 3553(a) must be considered. Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two. That sub-paragraph sets forth the purposes as:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).  Section 3553(a) further directs the Court -- in determining the particular sentence to impose -- to consider:  (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.  *See id.*

The Second Circuit has instructed that district courts should engage in a three-step sentencing procedure.  *See Crosby*, 397 F.3d at 103.  First, the Court must determine the applicable Sentencing Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." *Id.* at 112.  Second, the Court must consider whether a departure from that Guidelines range is appropriate.  *Id.*  Third, the Court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose.  *Id.* at 113.  In so doing, it is entirely proper for a judge to take into consideration his or her own sense of what is a fair and just sentence under all the circumstances.  *United States* v. *Jones*, 460 F.3d 191, 195 (2d Cir. 2006).

### B. Discussion

In this case, a sentence within the applicable Guidelines range is appropriate, primarily to reflect the serious nature and circumstances of the defendant's offense, to provide adequate deterrence, and to promote respect for the law.

While the Government acknowledges the defendant's history of good works and otherwise law-abiding background, as set forth in her sentencing submission, the conduct in this case stands out as more than a momentary aberration.  Rather, it was a scheme that continued for at least two years, from 2005 through 2007, as charged in the Indictment.  The defendant maintains that she stopped all criminal activity in 2006, but she was charged in connection with transactions that continued through at least February 2007.  (Indictment ¶ 44 (Count Eleven)).  Moreover, the defendant's role in the conspiracy, to which she pled guilty, was not as minimal as described in her sentencing submission.  The defendant ran the day-to-day operations of the office through which the co-conspirators processed the fraudulent loan applications.  (Indictment ¶ 18).  She conferred with the straw buyers, and then prepared and submitted fraudulent loan applications and false supporting documents to the lenders on their behalf.  She altered bank statements, created fake lease agreements, and false verifications of employment, all so that the lenders would believe the straw buyers to be credit-worthy and capable of paying back the home mortgage loans.  (PSR ¶ 29).  She also created false title documents that misrepresented the ownership of the properties at issue, in order to induce the lenders to issue the loans.  (PSR ¶ 32).  While her role was "minor" as compared to her brother and co-defendant, Danny Siony, who conceived of the scheme, the defendant played an integral part in the execution and perpetuation of the fraud on the lenders.

In addition, while the lenders suffered the financial losses in connection with the scheme, the defendant's actions took a very significant toll on the straw buyers who were recruited to participate in the fraud for the benefit of the defendant and her co-conspirators.  These individuals, most of whom were deceived into purchasing multiple properties that they

could not afford, have been devastated financially. Their credit has been ruined and their lives turned upside down by their involvement in the scheme. The defendant knew that these individuals could not afford the properties for which she and her co-conspirators obtained loans on their behalf, but that did not stop her from preparing and submitting false paperwork to the lenders.

While the Government agrees with the assessment in the PSR that the defendant does not appear to pose a high risk of recidivism, a Guidelines sentence is necessary to send a message of general deterrence to others who, like the defendants in this case, seek to take advantage of a financial system that does not impose adequate checks and balances on their conduct. Such a sentence also promotes respect for the law, which is an important and laudable goal, particularly in cases involving white-collar offenders, who often convince themselves that their conduct is not unlawful because it does not have any "real" victims and is not causing any harm.

For these reasons, a term of imprisonment within the advisory Guidelines range of 27 to 33 months would be sufficient, but not greater than necessary, to meet the statutory goals of sentencing.

## II.     The Court Should Impose Restitution in an Amount to Be Determined Later

The Mandatory Victims Restitution Act, Section 3663A of Title 18, United States Code ("MVRA"), requires a sentencing court to order payment of restitution when sentencing a defendant is convicted of "an offense against property under [Title 18] . . . including any offense committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(A)(ii). In this case, the defendant was convicted of a Title 18 offense against property that was committed by fraud -- specifically, wire

fraud -- so there can be no dispute that the MVRA applies.  *See United States* v. *Cummings*, 189 F. Supp. 2d 67, 76 (S.D.N.Y. 2002) (Cote, J.).  Thus, the Court is required to "order restitution to each victim in the full amount of each victim's losses . . . without consideration of the economic circumstances of the defendant."  18 U.S.C. § 3664(f)(1)(A).  *See United States* v. *Coriaty*, 300 F. 3d 244, 253 (2d Cir. 2002) (observing "the statutory focus on the victim's losses and upon making victims whole").

Restitution may only be ordered "for losses that [were] . . . directly caused by the conduct composing the offense of conviction," *United States* v. *Silkowski*, 32 F.3d 682, 689 (2d Cir.1994), and then, only for the victim's "actual loss," *United States* v. *Germosen*, 139 F.3d 120, 130 (2d Cir.1998); *see also United States* v. *Carboni*, 204 F.3d 39, 47 (2d Cir.2000).  The Government bears the burden of demonstrating the loss amount sustained by the victim as a result of the offense.  18 U.S.C. § 3664(e).  Any dispute as to the proper amount or type of restitution is to be resolved by the court by the preponderance of the evidence.  *Id.*  "Findings of the amount of loss may be based upon reasonable estimates."  *United States* v. *Agate*, 613 F. Supp.2d 315, (E.D.N.Y. 2009) (citing *United States* v. *Uddin*, 551 F.3d 176, 180 (2d Cir. 2009)); *United States* v. *Fogel*, 494 F. Supp.2d 136, 138-39 (D. Conn. 2007) (accepting restitution methodology that "reasonably approximate[d]" the actual loss).  At the same time, however, a restitution award must be based on "more than mere speculation about a victim's actual loss." *United State* v. *Donaghy*, 570 F. Supp. 2d 411, 423 (E.D.N.Y. 2008).

The Government continues to acquire information necessary to determine the appropriate restitution amount in this case.  Accordingly, the Government requests that the Court set a date for the final determination of the victims' losses not more than 90 days after

sentencing, pursuant to 18 U.S.C. § 3664(d)(5). In advance of that proceeding, the Government will provide the Court and the defendant with the restitution information.

## CONCLUSION

For the reasons set forth above, the Government respectfully submits that a sentence within the advisory Guidelines range is appropriate in this case.

Dated: New York, New York
      May 8, 2012

                                      Respectfully submitted,

                                      PREET BHARARA
                                      United States Attorney

                      By:    s/ Amy Lester
                            Amy Lester
                            Assistant United States Attorney
                            (212) 637-2416